IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


**JEFFREY L. NICHOLS and**
**PATRICIA L. NICHOLS,**
**husband and wife,**

     **Plaintiffs,**

**v.**                                    **Civil Action No. _____**

**SPRINGLEAF HOME EQUITY,**
**INC., fka Springleaf Home**
**Equity, Inc., a non-resident corporation,**

     **Defendant.**


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL**
**ARBITRATION AND TO STAY ALL FURTHER JUDICIAL PROCEEDINGS**

Defendant, Springleaf Home Equity, Inc. ("Springleaf"), moves for an order compelling arbitration and staying all further judicial proceedings in this action, including discovery, until arbitration has been completed.   As detailed below, the Arbitration Agreement between Springleaf and Borrowers requires arbitration of their claims.

In their Amended Complaint, Borrowers Jeffrey L. Nichols and Patricia L. Nichols ("Borrowers") bring myriad claims against Springleaf, including alleged violations of the Fair Debt Collection Practices Act, the West Virginia Consumer Credit and Protection Act, common law fraud and unconscionable contract, trespass and the tort of outrage.  All of the claims arise in connection with or relate to a loan they obtained from Springleaf.   Borrowers seek actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

Pursuant to a valid and mutually binding agreement between the Borrowers and Springleaf, Borrowers expressly agreed to arbitrate precisely these types of claims. Borrowers should not be permitted to avoid their contractual agreement and seek resolution of their claims in a forum other than the one to which they expressly agreed. Setting aside the merits of their underlying claims, the Borrowers' sole recourse for pursuing claims concerning the alleged wrongs is in arbitration -- not the present forum.

On October 9, 2002, Borrowers executed and delivered to Springleaf a contract entitlted "Springleaf Home Equity Line of Credit Agreement" (hereinafter referred to as the "Credit Agreement"), pursuant to which they obtained credit in the amount of $62,350.00 from Springleaf. *See Exhibit A* at pp. 1-7. The Credit Agreement contains a section entitled "Arbitration Agreement and Waiver of Jury Trial" (hereinafter referred to as the "Arbitration Agreement"). *See id.* at pp. 4-5. The Arbitration Agreement embodies the parties' agreement "that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us [the parties] ('Covered Claims'). [. . which] includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> **My [Borrowers'] loan from Lender [Springleaf] today**; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchase in connection with this or any previous loan or Retail Contract made by or assigned to Lender; **whether the claim dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the [Credit] Agreement, my understanding of them, or any defenses as to the validity and enforceability of the [Credit] Agreement and this Arbitration Agreement**; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal,

state, or local law, statute, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; **and any claim for injunctive, declaratory, or equitable relief**.

*Id.* at p. 4 (emphasis added).

The Arbitration Agreement further provides that in the event Lender exercises "lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure," that "any claim or counter claim for rescission or damages I [Borrowers] may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated." *Id.*

At the bottom of the Arbitration Agreement, above Borrowers' initials, appears an acknowledgement that they received and read the Arbitration Agreement and agreed to be bound by it:

> **I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING ANY RIGHTS TO A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THE AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

*Id.* at p. 5.

In addition, the October 9, 2002 Arbitration Agreement describes the rights that are waived in arbitration and stresses the importance of reading and understanding the Arbitration Agreement before entering into the Credit Agreement:

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION.  IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.**

*Id.* at p. 6.[1]  By signing directly below this box, Borrowers acknowledged that they read and agreed to be bound by the terms of the Arbitration Agreement.  *See id.*

_____

[1] Although the National Arbitration Forum ("NAF") is designated as the default arbitrator in the Arbitration Agreement, the "ARBITRATION FORUM AND RULES" section provides that:

> . . . In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender [Springleaf] and I [Borrowers] agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures.  In the event that AAA is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the AAA for good cause, then Lender and I agree to submit all disputes to JAMS for proceedings conducted under its Financial Services Arbitration Rules and Procedures. . . .

*Id.* at p. 4.  As of July 24, 2009, the NAF ceased administering consumer arbitrations.  *See* "National Arbitration Forum to Cease Administering All Consumer Arbitrations in Response to Mounting Legal and Legislative Challenges," *NAF website*, http://www.adrforum.com/newsroom.aspx?&itemID=1528&news=3 (last visited, August 8, 2011).  Accordingly, arbitration of Borrowers' claims against Springleaf would be administered through the AAA or, possibly, JAMS.

In the "OTHER IMPORTANT AGREEMENTS" section of the Arbitration Agreement, the parties agreed that:

> (c)   The Federal Arbitration Act applies to and governs this Agreement.  State arbitration laws and procedures shall not apply to this Agreement.
>
> . . .
>
> (g)   This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

*Id.* at p. 5.

## ARGUMENT

### I.   The Federal Arbitration Act's Strong Policy in Favor of Arbitration Mandates Enforcement of this Arbitration Agreement

The Arbitration Agreement expressly provides that the Federal Arbitration Act applies to and governs the agreement. *See* **Exhibit A** at p. 5, "Other Important Agreements." The FAA at 9 U.S.C § 2 "creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (internal citations omitted). The FAA constitutes "a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id.* Congress passed the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  Finally, the FAA pre-empts state laws that purport to limit enforcement of arbitration clauses governed by the Act. *AT&T Mobility, LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1470 (2011).

Under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable." 9 U.S.C. § 2. In that regard, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that courts **shall** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 and 4) (emphasis added). As noted by the Supreme Court, "[a]n order to arbitrate [a] particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960).

> Section 2 of the FAA provides:

> > A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA therefore mandates enforcement of an arbitration agreement where that agreement is (1) part of a contract or transaction involving commerce and (2) valid under general principals of contract law. *Id.*; *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686 (1996). The arbitration agreement between the Borrowers and Springleaf satisfies both of those requirements and is, therefore, enforceable under the FAA.

## II.     This Court Should Compel Arbitration of this Dispute

Pursuant to the FAA, a stay of "any suit or proceeding" is mandatory "pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*

*v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3); *see also Dean Witter Reynolds*, 470 U.S. at 218. A district court, therefore, must grant a motion to compel arbitration if a valid arbitration agreement exists and the issues in the case fall within the arbitration agreement's purview. *Id.* (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). In the Fourth Circuit, a movant can compel arbitration by showing:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). Springleaf satisfies all four of these elements as set forth below. Therefore, its motion to compel arbitration must be granted and the pending litigation should be stayed until the arbitration has been completed.

### A.     A Dispute Exists in this Case

On July 26, 2011, Borrowers filed an Amended Complaint alleging, among other things, that they are seeking statutory and enhanced damages as a result of their claims that Springleaf General violated the Fair Debt Collection Practices Act, the Bankruptcy Code, the West Virginia Consumer Credit and Protection Act, and West Virginia common law. Springleaf denies all of the alleged violations and further denies that Borrowers are entitled to any claims for damages under these statutes or the common law. Accordingly, a dispute exists in this matter.

### B.     The Arbitration Agreement is a Valid Agreement that Covers this Dispute

The Borrowers and Springleaf entered into a valid Arbitration Agreement that covers this dispute. The validity of an arbitration agreement is determined by reference to general principles

of state contract law. *See Casarotto,* 517 U.S. at 686-87 (1996) (state law may be applied "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally")(quoting *Perry v. Thomas,* 482 U.S. 483, 492 n.9 (1987)) (emphasis in original). But, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is "inconsonant with and is therefore preempted by, the federal law." *Casarotto,* 517 U.S. at 688; *see also AT&T Mobility, LLC v. Concepcion,* ___ U.S. ___, 131 S. Ct. 1470 (2011) (holding that FAA pre-empted California common law purporting to invalidate arbitration agreement as being unconsionable).

     1.     The Gateway Issues Concerning Whether the Borrowers' Claims Must be Arbitrated Is for the Arbitrator to Determine, Pursuant to the Arbitration Agreement's Delegation Provision

     Typically, whether parties have an enforceable agreement to arbitrate and whether the scope of that agreement extends to their dispute are issues for a court decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* ___ U.S. ___, 130 S. Ct. 2847, 2855-56 (2010); *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83-84 (2002). However, the exception to the above rule exists where the parties have agreed, in the arbitration agreement, that the arbitrator shall decide the validity and enforceability of the arbitration clauses. The United States Supreme Court recently made it clear that where an arbitration agreement (as here) contains a provision delegating to an arbitrator the decision concerning the enforceability of the arbitration agreement and whether a claim or dispute must be arbitrated, the arbitrator has exclusive authority to determine those issues. *Rent-A-Center, W., Inc. v. Jackson,* ___ U.S. ___, 130 S. Ct. 2772, 2774 (2010); *see also Granite Rock,* 130 S. Ct. at 2855-56 (same); *see also First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends on whether the

parties agreed to arbitrate the dispute, so the question 'who has the primary ability to decide arbitrability' turns upon what the parties agreed about that matter.") (citations omitted).

In *Rent-A-Center*, the Supreme Court specifically recognized that "parties can agree to arbitrate 'gateway' provisions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 130 S. Ct. at 2776 (citations omitted).  A party's intent to arbitrate issues of arbitrability (*i.e.*, delegate their determination to an arbitrator) must be demonstrated by "clear and unmistakable evidence." *Id.* (citing *First Options*, 514 U.S. at 944).  If a court concludes that the parties intended such a delegation, its work is finished and it must compel arbitration on issues relating to arbitrability, along with the underlying dispute, without addressing the merits of any challenge to arbitrability. *Rent-A-Center*, 130 S. Ct. at 2778; *see also Byrd*, 470 U.S. at 218 ("courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original).

Here, it is clear and unmistakable that the parties agreed to delegate the gateway issues of of arbitrabilty to the arbitrator.  *See* **Exhibit A** at p. 4 (defining "CLAIMS AND DISPUTES COVERED" to include ". . . whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement," and "any defenses as to [its] validity and enforceability.")  Any arguments by the Borrowers that they should not be bound by the Arbitration Agreement must also be decided by the arbitrator. *See id.*  The express terms of the Arbitration Agreement clearly and unmistakably delegate to the arbitrator the determination, among others, of whether Borrower's claims are subject to arbitration.  Consequently, it is the arbitrator, not this Court, which must consider whether Plaintiffs' claims are subject to

arbitration, and this court must compel arbitration on these issues along with the underlying dispute without addressing the merits on the issue of arbitrability.

> 2.   Even Were There No Delegation Provision in the Arbitration Agreement, the Borrowers' Claims Would Still be Covered Claims Subject to Arbitration

Even assuming the issues of arbitrability were for the Court to decide, the Arbitration Agreement clearly covers the Borrowers' claims.  The Arbitration Agreement was prominently disclosed to the Borrowers in bold typeface, and by signing the Loan Agreement, they are charged with knowledge and assent to the contents therein.  It is well established in West Virginia that parties are presumed to know the contents of the documents they sign. *See Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 318 (4th Cir. 1982) (holding that, under West Virginia law, a contracting party's inability to read the small type in which the contract was printed did not prevent enforcement of its terms). A party's failure to read a contract that he signs "does not excuse a person from being bound by its terms." *Reddy v. Cmty. Health Found. of Man*, 171 W. Va. 368, 373, 298 S.E.2d 906, 910 (1982).  As the West Virginia Supreme Court of Appeals has stated, "[c]ontracts are reduced to writing so that there can be no subsequent argument concerning the terms of an agreement.  A person who fails to read a document to which he places his signature does so at his peril." Id. (emphasis added). Thus, the Arbitration Agreement is valid under West Virginia law.

The Credit Agreement and Arbitration Agreement are unambiguous and provide that "Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us . . . ." *See* **Exhibit A** at p. 4 (emphasis in original).  The Borrowers accepted the terms of this Arbitration Agreement by initialing at the bottom of each page and by signing the Credit Agreement. *See id.* at pp. 1-7.  Just above the Borrowers'

signature on page 6 of the Credit Agreement, is an express statement wherein the Borrowers acknowledge that they have read, understands, and agrees to the terms of the Credit Agreement and the Arbitration Agreement as follows:

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION.  IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL.   ARBITRATION   WILL   BE   CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.**

*Id.* at p. 6.  This Arbitration Agreement is explicit, unambiguous and straightforward and the Borrowers accepted its terms when they entered into the Credit Agreement.  Accordingly, upon Springleaf's demand for arbitration, the Borrowers are obligated to resolve the instant dispute through arbitration.

Because the Arbitration Agreement is valid and enforceable and the Borrowers are bound by their agreement to arbitrate any claims against Springleaf, once either party elects arbitration, the only remaining issue is whether Borrowers' claims fall within its scope. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997).  If there is any doubt about the scope of arbitrable issues, the Court should resolve the doubt in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  As the United States Supreme Court has stated:

> [W]here the contract contains an arbitration clause, there is a
> presumption of arbitrability in the sense that "an order to arbitrate
> the particular grievance should not be denied unless it may be said
> with positive assurance that the arbitration clause is not susceptible
> of an interpretation that covers the asserted dispute. Doubts should
> be resolved in favor of coverage."

*AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986) (quoting *Warrior &*

*Gulf*, 363 U.S. at 582-83).

The Borrowers' claims arise out of and/or relate to either the Credit Agreement or

Springleaf's exercise of its remedies.  For example, the Borrowers broadly allege that Springleaf

committed wrongdoing in connection with securing deeds of trust, undertaking to collect on the

Credit Agreement, and undertaking to exercise its rights to foreclose under the deeds of trust.

*See* Plaintiffs' Am. Compl., ¶¶ 11-14, 19-20, 25.  The Borrowers purport to state common law

claims for fraud and unconscionable conduct (¶¶ 1-26) and the tort of outrage (¶¶ 45-46); state

statutory claims for trespass (¶¶ 27-32) and violations of the West Virginia Consumer Credit and

Protection Act (¶¶ 35-36); federal statutory claims for violations of 11 U.S.C. § 362 (¶¶ 33-34)

and the Fair Debt Collection Practices Act (¶¶37-44); and for remedies for declaratory judgment

(¶¶ 47-49) and for punitive damages (¶¶ 50-51).  The Borrowers' claims clearly fall within the

scope of the Arbitration Agreement, which applies to disputes concerning, among others:

> • all documents, . . . actions, or missions relating to this or any
> previous loan . . . ;
>
> • the closing, servicing, collecting, or enforcement of any
> transaction[2] covered by this [Arbitration] Agreement;
>
> • any allegation of fraud or misrepresentation;

---

[2] Again, transactions that fall within the scope of the Arbitration Agreement include the Borrowers' October 2002 Credit Agreement ("all claims and disputes arising out of, in connection with, or relating to my [Borrowers] loan from Lender [Springleaf] today..."). *See* **Exhibit A**.

- any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance or rule;

- any claim based on state or federal property laws;

- any claim or dispute based on any alleged tort (wrong), including intentional torts;

- and any claim for injunctive, declaratory, or equitable relief.

*See* **Exhibit A** at p. 4. All of the Borrowers' purported causes of action, and the gravamen of their allegations in the whole, fall squarely within the scope of Covered Claims and, accordingly, must be compelled to arbitration.

### C. The Credit Agreement Involves Commerce

The Arbitration Agreement expressly states that it is governed by the FAA, and that state arbitration laws and procedures shall not apply to the agreement. *See* **Exhibit A** at p. 5, "Other Important Agreements." As a choice-of-law provision, this, alone, should ensure the applicability of the FAA to the Arbitration Agreement.[3]

Section 1 of the FAA expressly defines "commerce" as "commerce among the several States or with foreign nations ...." 9 U.S.C. § 1. The United States Supreme Court has held that the FAA reaches to the outer limits of Congress' power to regulate under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74 (1995).

In this case, the Credit Agreement between Springleaf and the Borrowers involves interstate commerce because, *inter alia*, "the economic activity in question would represent a general practice . . . subject to federal control." *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539

---

[3] Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*. 489 U.S. 468, 479 (1989). Therefore, parties to a contract are free to specify whether their agreement to arbitrate will be governed by the FAA or state law, as was done here. *Id.* Significantly, even absent such a provision, the FAA would still apply in this matter.

U.S. 52, 56-58 (2003) (interpreting the term "involving commerce" in the FAA to include the broadest permissible exercise of Congress' Commerce Clause power) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (2003)).  The Borrowers executed a home equity line of credit agreement with Springleaf – a financial transaction subject to TILA, for which the Borrowers can make no cclaim that the extending of credit to them was in any way not part of the general practice of Springleaf.  Consequently, the Borrowers' contractual relationship with Springleaf involved interstate commerce and the Arbitration Agreement connected with that relationship is governed by and enforceable under the FAA.

**D.     The Borrowers Have Refused to Submit to Arbitration**

That the Borrowers have refused to submit to arbitration is self-evident: Borrowers filed the present action in lieu of instituting arbitration proceedings in accordance with the terms of the Arbitration Agreement. Accordingly, this motion is ripe for decision.

**CONCLUSION**

For the foregoing reasons, the Borrowers' claims contained within the Complaint fall squarely within the scope of the Arbitration Agreement and they are bound by its terms and should be compelled to arbitrate the claims raised in the Complaint. Because each of the claims alleged in the Borrowers' Complaint is subject to arbitration, Springleaf respectfully submits that, upon entry of an order compelling arbitration, a stay of all litigation is appropriate.

Accordingly, Springleaf requests that the Court grant its Motion to Compel Arbitration and to Stay all Further Litigation and grant any additional relief as this Court deems just and appropriate.

SPRINGLEAF HOME EQUITY, INC.,

*By Counsel,*

/s/ Richard D. Owen
Richard D. Owen (WVSB #2794)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia 25301-1678
Telephone: (304) 346-7000
Facsimile:  (304) 344-9692

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JEFFREY L. NICHOLS and
PATRICIA L. NICHOLS,
husband and wife,

      Plaintiffs,

v.                                     Civil Action No. _____

SPRINGLEAF HOME EQUITY,
INC., fka American General Home
Equity, Inc., a non-resident corporation,

      Defendant.

## CERTIFICATE OF SERVICE

      I, Richard D. Owen, hereby certify that I served the forgoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION** on this 9th day of August, 2011 by e-filing and placing a true and correct copy thereof in the United States Mail, postage prepaid, addressed as stated on the following counsel of record:

                Paul A. Ryker
                Paul A. Ryker, L.C.
                5950 Route 60 East, Suite B
                Barboursville, WV 25504


                                        /s/ Richard D. Owen
                                     Richard D. Owen